## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KEVIN K. KAMRA, individually
and on behalf of those similarly situated,

      Plaintiff,

vs.

BUSINESS LAW GROUP, P.A. and
LM FUNDING, LLC,

      Defendants

_____/

**DISPOSITIVE MOTION**


Case No. 8:16-cv-00786-CEH-TBM

## DEFENDANTS' MOTION TO DISMISS COMPLAINT

Defendants Business Law Group, P.A. ("BLG") and LM Funding, LLC ("LMF") (together, "Defendants"), through their counsel, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., and pursuant to Federal Rule of Civil Procedure 12(b)(6), seek entry of an order dismissing the complaint [Doc. 2] filed by Plaintiff, Kevin K. Kamra ("Plaintiff") for failure to state a claim for relief.

## BACKGROUND

### A.    Summary of Plaintiff's Allegations

Plaintiff is the mortgage-foreclosure purchaser of Unit 1405 (the "Unit") in the Seagrove Highlands Condominium Owners Association (the "Association") community. Compl. ¶¶ 3 and 57. The Association is among those that contract with LMF to provide funding on delinquent accounts receivable for community association common expense

assessments and related charges, such as interest, late charges and collection costs and fees. *See, generally*, Compl. Ex. B.   BLG is a law firm retained to represent the community associations involved in disputes concerning such matters.  *See* Compl. ¶¶ 6, 39 and 41.

On January 26, 2015, Plaintiff was issued a certificate of title to the Unit.  Compl. ¶ 57.   The complaint alleges that, pursuant to Florida Statutes § 718.116(1)(a),[1] Plaintiff thereupon "became jointly and severally liable with the Unit's previous owner for all unpaid assessments that came due up to the time of transfer of title."   Compl. ¶ 58 (emphasis omitted).   Shortly thereafter, Plaintiff received an estoppel certificate from BLG requesting payment of the delinquent assessment balance for the Unit, which included the principal amount of assessments, accrued interest, late charges, legal fees and other costs, and giving statutory notice of the Association's intent to file a claim of lien against the Unit.  Compl. ¶ 59 and Ex. C.  Plaintiff requested a detailed statement of the account for the Unit, which BLG provided.  *See* Compl. Ex. D and Ex. E.

Over the next several months, Plaintiff and his counsel exchanged correspondence with the Association and BLG, in which Plaintiff disputed his liability for interest, late charges, legal fees and other costs incurred by the Association for collection on the previous owner's delinquent assessments. *See* Compl. Ex. F, Ex. G and Ex. I.  Plaintiff made a series of partial payments to the Association, and the Association eventually recorded a claim of lien on the Unit.  *See* Compl. ¶¶ 63, 67-68, 73 and Composite Ex. J.   Plaintiff then sent additional partial payments to BLG toward the remaining balance, and finally settled with the

---

[1] The complaint also refers to statutes governing homeowners associations.  Plaintiff does not allege that he purchased property within a homeowners association, so Florida Statutes Chapter 720 does not apply to Plaintiff's individual claim.

Association on the amount due to discharge the Association's lien, for which a satisfaction was recorded in July 2015. *See* Compl. ¶ 80, Comp. Ex. J, and Ex. K, p. 4. In February 2016, Plaintiff filed this lawsuit, seeking to revive with BLG and LMF the dispute he settled with the Association, and to recover from Defendants sums he remitted to BLG to resolve the issue of his liability for the previous owner's unpaid assessments on the Unit, as well as payments made by others he contends are similarly situated. *See* Compl. ¶¶ 1-11.

**B.**      **Summary of Plaintiff's Claims**

Plaintiff's complaint alleges that Florida Statutes § 718.116(1) "define[s a condominium purchaser]'s liability for the previous owner's Association debts." Compl. ¶ 22-23. According to Plaintiff, the provision in Florida Statutes §718.116(1)(a) that states that each condominium "unit owner is jointly and severally liable with the previous owner for all unpaid assessments that came due up to the time of transfer of title," must be construed to mean that a "new owner is only liable for the previous owner's unpaid assessments[, not] for the previous owner's interest or late fees or the Association's costs or attorneys' fees or any other amounts." Compl. ¶ 31. Plaintiff cites the statutory definition of "assessments" and a provision in the Association's declaration confirming purchasers' liability for any unpaid assessments on a unit, in support of his interpretation of the statute as "defin[ing] a purchaser's] liability for the previous owner's Association debts" as consisting of only the principal amount of the assessments left unpaid by the previous owner.[2] *See* Compl. ¶¶ 22-23 and 25-27.

---

[2] Plaintiff also cites a provision in LMF's agreement with the Association that defines "Assessments" as used therein, but ignores that agreement's definition of "Delinquent Assessments." *See* Compl. ¶ 28 and Ex. B, p. 2

Plaintiff contends the statute admits no other interpretation, and therefore Defendants "know" purchasers are not liable for interest or any other sum due for the previous owner's assessments.   On this premise, Plaintiff claims that Defendants conspire to unlawfully demand and collect payment of sums that exceed a condominium unit purchaser's liability under the governing condominium declaration and applicable statutes.   *See, generally,* Compl. ¶¶ 9 and 32 and Count VI.   Plaintiff seeks injunctive relief and damages under the Florida Consumer Collection Practices Act ("FCCPA") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and asserts claims for unjust enrichment, civil conspiracy and restitution.   As a matter of law, Plaintiff is not entitled to the relief he seeks because the allegations of the complaint fail to state any claim.   For the reasons explained below, the complaint should be dismissed.

## ARGUMENT

### A.   The Complaint States No Claims Because Unit Owners Are Jointly and Severally Liable With Their Predecessors In Title for Unpaid Assessments, and Take Title Subject to the Association's Lien Rights.

The Florida Legislature has adopted a statutory scheme to ensure condominium associations' ability to collect assessments that are essential to the safety and welfare of residents, and to the preservation and operation of property maintained under the condominium form of ownership.

The first sentence in Florida Statutes § 718.116(1)(a) provides:   "A unit owner, regardless of how his or her title has been acquired, including by purchase at a foreclosure sale or by deed in lieu of foreclosure, is liable for all assessments which come due while he or she is the unit owner."   Then, to ensure associations' ability to actually recover amounts

due for delinquent assessments on a unit despite changes in unit ownership (whether voluntary or involuntary) and unit owner insolvency or discharge in bankruptcy, the statutory framework incorporates an historic common law doctrine, as the second sentence goes on to provide:  "Additionally, a unit owner is jointly and severally liable with the previous owner for all unpaid assessments that came due up to the time of transfer of title."  Fla. Stat. § 718.116(1)(a) (emphasis added).[3]

As explained below, a unit owner's liability for all unpaid assessments that come due while the owner is in title, pursuant to the first sentence in the statute, indisputably includes the full principal amount of any unpaid assessments, plus all accrued interest, fees, costs and other charges incurred due to the failure to make timely payment.  Under the second sentence of the statute, therefore, the liability of a unit purchaser who "is jointly and severally liable with the previous owner for all unpaid assessments" is coextensive with the previous owner's liability for unpaid assessments, including for interest, fees, costs and other charges incurred while the predecessor was in title.

---

[3] The joint and several liability of a first mortgagee that acquires title to a unit through foreclosure of its mortgage is limited under the statute, in deference to the interests of purchase money mortgage lenders.  *See* Fla. Stat. § 718.116(1)(b)(1).  An association that acquires title through foreclosure on a unit within its community is skipped in the chain of succession of joint and several liability with respect to amounts due to that association.  *See* Fla. Stat. § 718.116(1)(a).  And because a foreclosure purchaser's joint and several successor liability extends to all sums due from the predecessor in title for assessments, an association that acquires title to a unit through foreclosure of its own lien is exempted altogether from successor joint and several liability to any master association "for any unpaid assessments, late fees, interest or reasonable attorney's fees and costs that came due before the association's acquisition of title."  Fla. Stat. § 718.116(1)(b)(2).

1.  <u>Unit Owners Are Liable for Interest, Fees and Expenses for Unpaid Assessments.</u>

Under the Florida Condominium Act, all unit owners are personally liable for interest, late charges, and costs and fees incurred for unpaid assessments that come due during the owner's time in title.  The statutes provide "[a]ssessments and installments on assessments which are not paid when due bear interest . . . from the due date until paid" at 18% per annum or at the rate provided in the declaration," and authorize associations to charge late fees for unpaid assessments.  Fla. Stat. § 781.116(3).  An "association has a lien on each condominium parcel to secure the payment of assessments . . .  that are due and that may accrue after the claim of lien is recorded . . . as well as interest, administrative late fees, and all reasonable costs and attorney fees incurred by the association incident to the collection process."  Fla. Stat. § 718.116(5).

"Any payment received by an association must be applied first to any interest accrued by the association, then to any administrative late fee, then to any costs and reasonable attorney fees incurred in collection, and then to the delinquent assessment . . . notwithstanding [Florida Statutes §] 673.3111, any purported accord and satisfaction, or any restrictive endorsement, designation, or instruction placed on or accompanying a payment."  Fla. Stat. § 718.116(3).  An association may bring an action "to foreclose a lien for assessments . . . and may also bring an action to recover a money judgment for the unpaid assessments without waving any claim of lien," and is entitled to recover its attorney's fees incurred in either kind of proceeding.  Fla. Stat. § 718.116(6)(a).  Only "[u]pon payment in full [is] the person making the payment [] entitled to a satisfaction of the lien."  Fla. Stat. § 718.116(5)(b).

6

The Seagrove Highlands Association's recorded declaration imposes similar obligations on unit owners.  As set forth in Exhibit A to the complaint, the declaration states that its provisions concerning the Association's authority "to make, levy and collect assessments to pay the costs and expenses for operation and management of the Condominium . . . shall be effective and binding upon all Unit Owners."  Ass'n Decl. Art. XVII (ASSESSMENTS), § A (Liability, Liens and Enforcement), Compl. Ex. A, p. 16. After providing for the levy of assessments payable in installments for budgeted common expenses, contingencies and reserves, and for such additional special assessments as may be required, the declaration provides that owners are liable for interest and late fees for unpaid assessments:

> The payment of any assessment or installment thereof due the Association shall be in default if such assessment or any installment thereof is not paid to the Association on or before the due date for such payment.  When in default, the delinquent assessment or delinquent installment due to the Association shall bear interest at the maximum legal rate until such delinquent assessment or installment and all interest due thereon, has been paid in full.  In addition, the Association shall charge an administrative late fee, in an amount of Twenty Five Dollars ($25) or five percent (5%) of the assessment, whichever is greater, for each delinquent installment that the payment is late.

Ass'n Decl. Art. XVII, § A(5), Compl. Ex. A, p. 17.

> The Declaration also provides for liens for unpaid assessments:
>
> [T]he Association shall be entitled to a lien against Condominium Parcels for delinquent assessments.  Said lien shall secure and does secure the monies due for all assessments now or hereafter levied against the Owner of each Condominium Parcel, which lien shall also secure interest, if any, which may be due on the amount of any delinquent assessments owing the Association.  Said lien shall also secure the costs and expense, including a reasonable attorney's fee" incurred by the Association in enforcement.  All persons, firms, or corporations who shall acquire, by whatever means, any interest in the Ownership of any Condominium Parcel . . . are hereby placed on notice of

7

the lien rights granted to the Association and shall acquire such interest in any Condominium Parcel expressly subject to lien.

Ass'n Decl. Art. XVII, § A(8), Compl. Ex. A, p. 18.

Perhaps most importantly, the Association's declaration further provides: "Each Unit Owner shall be personally liable to the Association, jointly and severally, as the case may be, for the payment of all assessments, regular and special, which may be levied by the Association against such party or parties as Owners of a Unit in this Condominium.  In the event that any Unit Owner is in default in the payment of any assessment or installment . . . such Owner shall be personally liable, jointly and severally, for interest and late fees on such delinquent assessment or installment as above provided, and for all costs of collecting such assessment or installment and interest thereon, including a reasonable attorney's fee, whether suit be brought or not."  Ass'n Decl. Art. XVII, § A(6), Compl. Ex. A, p. 17.

Accordingly, the liability of a unit owner for unpaid assessments that come due during the owner's term in title indisputably extends to the full principal amount of any unpaid assessments, plus all accrued interest, fees, costs and other charges incurred.

2.  Unit Owners Are Jointly and Severally Liable with Predecessors for Predecessors' Unpaid Assessments.

The second sentence of Florida Statutes § 718.116(1)(a) provides that every condominium purchaser "is jointly and severally liable with the previous owner for all unpaid assessments that came due up to the time of transfer of title" to the purchaser.  Joint and several liability renders those subject to it fully liable each to the same extent as the other.  *See Gouty v. Schnepel*, 795 So. 2d 959, 961 (Fla. 2001) (noting that "at common law, under the doctrine of joint and several liability, all negligent defendants were held

responsible for the total of the plaintiff's damages regardless of the extent of each defendant's fault"). Joint and several liability is inherently coextensive between the parties; each party is responsible for the whole of the liability of the other. *Louisville & Nashville R.R. Co. v. Allen*, 67 Fla. 257, 269 (Fla. 1914) ("Where although concert is lacking . . . each is responsible for the entire result"). Apportionment or reduction of the amount or scope of one party's liability is repugnant to the fundamental principles of the doctrine. *See Gouty* at 962-963 (discussing the enactment of set-off statutes as needed to avoid excess recovery by claimants who settle out of court with one party jointly liable on the claim, but proceed to judgment against another jointly liable party).

Because the statute specifically provides that successor unit owners are jointly and severally liable with their predecessors for assessments that came due during the predecessor's time in title, the liability of successor owners for unpaid assessments cannot be construed as limited to the principal amount of unpaid assessments. To the contrary: the statute's imposition of joint and several liability on successor owners means that their personal liability for unpaid assessments is coextensive with their predecessors' liability for unpaid assessments, including for principal, interest, late fees, and costs, expenses and attorney's fees incurred.

3. <u>Unit Purchasers Take Title Subject to Associations' Lien Rights</u>.

The Florida Condominium Act provides associations with expansive lien rights that include the right to enforce a lien for the principal amount of assessments, plus all interest, late charges, and costs, expenses and fees incurred in collection. An "association has a lien on each parcel to secure the payment of assessments." Fla. Stat. § 718.116(5)(a). Subject to

limitations on first-mortgagee and association liability for predecessors' unpaid assessments, associations' lien rights[4], the right to assert a lien exists without regard to who holds title to the unit:  before an association files a claim of lien preliminary to enforcement of its lien rights, the association need only give statutory notice to the current unit owner.  *See* Fla. Stat. § 718.116(5) and 718.121(4).  The Seagrove Highlands Association's declaration is similarly expansive with respect to the Association's lien rights.  *See In re: Fernandez*, 2013 Bankr. LEXIS 4693 (S.D. Fla. 2013) (citing to Florida law and the condominium's declaration as dictating the nature and extent of an association's lien rights); *Colony Beach & Tennis Club, Inc. v. Colony Beach & Tennis Club Ass'n*, 456 B.R. 545, 556, n.6 (M.D. Fla. 2011) ("the declaration of a condominium is the condominium's constitution"); *Aquarian Foundation, Inc. v. Sholom House, Inc.*, 448 So. 2d 1166, 1167 (Fla. 3d DCA 1984) (reasoning that "strict enforcement of . . . an association's private constitution, that is, its declaration of condominium, protects the members' reliance interests in a document which they have knowingly accepted").  There is no provision in either the statutes or the declaration that prohibits or limits the Association's enforcement of lien rights against a foreclosure purchaser like Plaintiff.

For all of the foregoing reasons, Plaintiff's proposed construction of the statute to limit successor owner liability to only the principal amount of the previous unit owner's unpaid assessments should be rejected, as it completely ignores the express statutory imposition of joint and several liability.  Similarly, there is nothing in the statutes or Association declaration that would limit the Association's right to file and enforce a claim of

---

[4] *See infra*, p. 5, n.3.

lien against a unit after it has been transferred to a foreclosure purchaser.  As a matter of law Plaintiff cannot state a claim arising from or based on Defendants' alleged issuance of estoppel certificates that comply with Florida law, and the complaint should be dismissed.

**B.      The Complaint Fails to State a Claim for Violation of Florida's Consumer Collection Practices Act and States No Claim against LMF.**

Counts I and II for injunctive relief and damages for violation of Florida's Consumer Collection Practices Act ("FCCPA") fail to state a claim for relief.

Florida Statutes § 559.72(9) prohibits a debt collector from asserting the existence of a legal right when the collector knows the right does not exist.  *Trent v. Mortg. Elec. Registration Sys.*, 618 F. Supp. 2d 1356, 1362 (M.D. Fla. 2007).  To show a violation of § 559.72(9), "it must be shown that a legal right that did not exist was asserted and that the person had *actual knowledge* that the right did not exist."  *Pollack v. Bay Area Credit Serv., LLC*, 2009 U.S. Dist. LEXIS 71169 at *9 (S.D. Fla. 2009) (emphasis added); *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1309-1310 (S.D. Fla. 2009) ("Simply pleading that defendant had knowledge is not enough.  Under Florida law 'the use of the word 'knows' requires actual knowledge of the impropriety or overreach of a claim'") (internal citations omitted); *Bentley v. Bank of America, N.A.*, 773 F. Supp. 2d 1367, 1372-73 (S.D. Fla. 2011) (dismissing claims for violation of Section 559.72(9) because allegations against defendants—who were improperly lumped together—were conclusory and lacked specific allegations as to each defendant's knowledge).

The complaint lacks the required specific allegations establishing each Defendant's actual knowledge that the asserted legal right did not exist.  Plaintiff concludes only that BLG "knew that such legal right did not exist" without explaining the basis of the alleged

knowledge, other than to assert that it is inconsistent with the statutory interpretation urged by Plaintiff.  *See* Compl. ¶¶ 98-99.  Such conclusory allegations are insufficient, and the FCCPA claims should be dismissed.  Moreover, Counts I and II contain no factual allegations directed to LMF, and as such, both counts should be dismissed against LMF.

As explained above, the statute renders unit purchasers jointly and severally liable with their predecessors in title for unpaid assessments that came due during the predecessors' tenure, and such joint and several liability necessarily extends to interest, late fees and other charges accrued thereon.  But even if Plaintiff's interpretation of the statute were to prevail, the statute does not prohibit collection of interest and late fees that accrued before the current unit owner took title to the property.  The Association declaration's definition of "Unit Owner" does not contain a distinction between current and previous unit owners.  Compl. Ex. A, p. 2.  Similarly, the statutes and declaration vest in the Association the right to enforce its lien against the parcel for unpaid assessments, and make the lien effective to secure repayment of interest and other charges due for unpaid assessments.  The statutes require the Association to give notice of its intent to file a claim of lien, but do not prohibit Associations from asserting their right to file a claim of lien for interest and other charges.

"[A] demand for payment upon a legitimate debt will not support a claim under section 559.72(9)."  *Locke v. Wells Fargo Home Mortg.*, 2010 U.S. Dist. LEXIS 126140 at *7 (S.D. Fla. 2010).  The complaint fails to allege a factual basis for Plaintiff's conclusion that "Defendants knew" they were asserting a legal right that did not exist.  For the foregoing reasons, the complaint fails to state a claim for relief under the FCCPA, and Counts I and II must be dismissed.

**C.**     **The Complaint Fails to State a FDUTPA Claim Because Plaintiff Has Alleged No Act or Practice in the "Conduct of Any Trade or Commerce".**

Counts III and IV for injunctive relief and damages for violation of FDUTPA also fail to state any claim for which relief may be granted.

FDUTPA prohibits "unfair or deceptive practices in the conduct of any trade or commerce."   Fla. Stat. § 501.204(1).   The statutes define "trade or commerce" as "advertising, soliciting, providing, offering, or distributing whether by sale, rental or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity or thing of value."   Fla. Stat. § 501.203(8).   Plaintiff's complaint fails to allege or reflect that Defendants' alleged "unlawful demands" constitute activity undertaken in the course of Defendants' advertising, soliciting, providing, or offering any goods or services in trade or commerce.   Moreover, conduct undertaken to preserve and pursue legal remedies, including delivery of pre-suit demands and filing of liens are not acts or practices "in the conduct of [] trade or commerce" as necessary to support a FDUTPA claim, as a matter of law.   *See Acosta v. Gustino*, 2012 U.S. Dist. LEXIS 130656 (M.D. Fla. 2012) (dismissing FDUTPA claims based on letters demanding payment of community association assessments and allegedly usurious interest, because such activity was not undertaken in the conduct of "trade or commerce"); *Baker v. Baptist Hospital*, 115 So. 3d 1123, 1124-1126 (Fla. 1st DCA 2013) (hospital's conduct in recording claim of lien was not a practice in trade or commerce to which FDUTPA applies).

Defendants are cognizant of the case law cited by the plaintiff in the companion case before this Court, *Wilmington Savings Fund Society, FSB v. Business Law Group, P.A., LM Funding, LLC and Bruce Rodgers*, in response to Defendants' motion to dismiss a FDUTPA

claim.  *See* U.S. Dist. Ct. M.D. Fla. Case No. 8:15-cv-2831 Doc. 25, p. 15.  That case law is

distinguishable and inapplicable.  In *Williams v. Edelman*, 408 F. Supp. 2d 1261, 1274 (S.D.

Fla. 2005) the court did not deny a motion to dismiss a FDUTPA claim on the basis that

attempting to collect a debt may fall within FDUTPA's broad definition of "trade or

commerce."  Rather, the defendants in that case argued that the FDUTPA claim should be

dismissed because the purchase of a condominium unit was not a "consumer transaction"

under FDUTPA, and because the parties did not directly transact business with each

other.  The court refused to dismiss the complaint on those grounds.  In *Schauer v. GMAC*,

819 So. 2d 809 (Fla. 4th DCA 2002), the court reversed dismissal of the plaintiff's

complaint, finding the plaintiff alleged sufficient facts to show the defendant violated

FDUTPA by "willfully harassing" the plaintiff and his family with respect to the collection

of a debt.  Again, the court did not specifically find that debt collection activity falls within

the definition of "trade or commerce" and the *Schauer* holding is limited to its facts.

In *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1323-24 (S.D. Fla. 2014) the

plaintiff's FDUTPA claim survived a motion to dismiss because it alleged the plaintiff was

billed for specific services that were unauthorized and that the defendant never

performed.  In this case, Plaintiff fails to allege that Defendants performed or failed to

perform any services for which Plaintiff was charged.  Similarly, in *Martorella v. Deutsche

Bank Nat'l Trust Co.,* 931 F. Supp. 2d 1218, 1224 (S.D. Fla. 2013) the court declined to

dismiss a FDUTPA claim because the plaintiff specifically alleged the defendants provided

insurance for which the plaintiff paid excessive premiums and the defendants received illegal

14

kickbacks.  In this case, Plaintiff has not alleged, and cannot allege, that Defendants provided any services to him that would constitute "trade or commerce."

The conduct alleged in Plaintiff's complaint was undertaken to preserve and pursue legal remedies, and so are not acts or practices undertaken "in the conduct of [] trade or commerce" as necessary to support a FDUTPA claim.  Accordingly, the complaint fails to state a claim for relief under FDUTPA, and Counts III and IV must be dismissed.

**D.    The Complaint States No Claims for Unjust Enrichment or Restitution.**

Counts V and VII of the complaint assert claims for unjust enrichment and restitution. As with the FDUTPA claims, the complaint fails to state any proper quasi-contract claims.[5] Therefore Counts V and VII should be dismissed.

To state a claim for unjust enrichment, the complaint must allege facts to demonstrate that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (affirming the dismissal of unjust enrichment claim based on failure to properly allege that the plaintiff conferred a benefit on the defendant).  Similarly, to be entitled to restitution, a plaintiff must have conferred a benefit on a defendant.  *Fla. Power & Light Co. v. Allis-Chalmers Corp.*, 752 F. Supp. 434, 439 (S.D. Fla. 1990).  In this case, the complaint contains the conclusory statement that Plaintiff has "conferred a benefit on Defendants."  Compl. ¶ 127.  But it is well settled that

---

[5] Under Florida law, restitution is more a remedy than a substantive claim.  *Cf. Circle Fin. Co. v. Peacock*, 399 So. 2d 81, 83-85 (Fla. 1st DCA 1981).  Accordingly, Plaintiff's claim for "restitution" is better characterized as a quasi-contract claim for "money had and received."

such a "formulaic recitation of the elements of a cause of action" does not suffice.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  As explained below, the complaint fails to allege facts in support of Plaintiff's contention that it conferred a benefit on either of the Defendants, and therefore fails to state any quasi-contract claim.

Plaintiff's quasi-contract claims are based on the provision of an allegedly "illegal" estoppel certificate to Plaintiff.  Compl. ¶ 138.  As discussed above, inclusion of interest and other charges in the estoppel certificate and other letters sent to Plaintiff was permitted by the Association's declaration and the applicable statutes, and at the very least was by no means proscribed in either Section 718.116(1)(a) or the declaration.  Moreover, Plaintiff's claims for unjust enrichment and restitution are barred on the face of the complaint under Florida's voluntary payment doctrine.  That doctrine bars any claim for return of funds paid voluntarily, even if the payment was not legally due and owing.  *See Hassen v. MediaOne of Greater Fla., Inc.,* 751 So. 2d 1289, 1290 (Fla. 1st DCA 2000) (affirming trial court's entry of judgment on the pleadings for defendants, as voluntary payment doctrine barred plaintiff's claim to recover payment of allegedly unlawful late fees as a matter of law); *Kelly v. Palmer Reifler & Assoc., Inc.*, 681 F. Supp. 2d 1356, 1384-1385 (S.D. Fla. 2010) (holding that plaintiffs who had made payment to settle disputed claims were not entitled to restitution of any alleged overpayment as a matter of law on theories of unjust enrichment or money-had-and-received).  Accordingly, any claim for unjust enrichment or restitution is barred on the face of the complaint, and Counts V and VII should be dismissed.

**E.**      **The Complaint States No Claim for Civil Conspiracy.**

"A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Pierson v. Orlando Reg'l Healthcare Sys.*, 2010 U.S. Dist. LEXIS 33974 *79-80 (M.D. Fla. Apr. 6, 2010).

A claim for civil conspiracy is not an independent cause of action—it requires an actionable underlying tort. *Ocala Loan Co. v. Smith*, 155 So. 2d 711, 716 (Fla. 1st DCA 1963).   Accordingly, even if all elements constituting a civil conspiracy are properly pled, unless there is an actionable tort or wrong on which the civil conspiracy claim is based, there can be no cause of action for civil conspiracy.   *See Carlson v. Armstrong World Indus., Inc.*, 693 F. Supp. 1073, 1078 (S.D. Fla. 1987) ("[t]he basis of a civil conspiracy action is not the conspiracy itself but the civil wrong which is done through the conspiracy resulting in injury to the plaintiff").   For all of the reasons explained above, the outstanding amounts listed in the estoppel certificate and other letters described in the complaint were proper as a matter of law.   Accordingly, the complaint fails to allege any actionable tort or other wrong, and Plaintiff has stated no claim for civil conspiracy.

Even if the actions alleged in the complaint gave rise to an actionable tort or wrong, the complaint fails to state a claim for civil conspiracy.   A complaint for civil conspiracy at minimum should describe the scope of the conspiracy, identify its participants, and allege when the agreement was made.   *Pierson* at *81.   The complaint in this case offers nothing more than a conclusory statement that "Defendants agreed" to send estoppel certificates to

Plaintiff.  Compl. ¶ 131.  Such "[c]onclusory allegations of an agreement are not sufficient to state a cause of action for conspiracy." *Pierson* at *81; *see also Haskin v. R.J. Reynolds Tobacco Co.,* 995 F. Supp. 1437, 1439-1440 (dismissing conspiracy claim that failed to differentiate between multiple defendants).  Because the complaint fails to plead a claim for civil conspiracy with requisite particularity, Count VI of the complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, the complaint fails to state a claim for which relief may be granted.  Accordingly, Defendants seek entry of an Order dismissing the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), together with such other and further relief as may be available under the circumstances, including an award of Defendants' attorneys' fees and costs incurred to the extent such an award is available under applicable law.

/s/ *Stephanie S. Leuthauser*
CHARLES M. HARRIS, JR., FBN 967459
charris@trenam.com, gkesinger@trenam.com
JOHN D. GOLDSMITH, FBN 0444278
jgoldsmith@trenam.com, mgarcia@trenam.com,
svanboskerck@trenam.com
STEPHANIE S. LEUTHAUSER, FBN 0044981
sleuthauser@trenam.com, jamer@trenam.com
WILLIAM A. McBRIDE, FBN 112081
bmcbride@trenam.com, lbehr@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
 FRYE, O'NEILL & MULLIS, P.A.
200 Central Avenue, Suite 1600
St. Petersburg, FL 33701
(727) 896-7171 / (727) 820-0835 (facsimile)
Counsel for Defendants

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 7, 2016, a true and correct copy of Defendants'

Motion to Dismiss Complaint was filed via CM/ECF, which will send a copy to counsel of

record.

/s/ *Stephanie S. Leuthauser*
Attorney