UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEVIN K. KAMRA,

    Plaintiff,

vs.                                        Case No: 8:16-cv-786-T-36TBM

BUSINESS LAW GROUP, P.A.,
and LM FUNDING, LLC

    Defendants,

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Plaintiff, Kevin K. Kamra, responds in opposition to the Motion to Dismiss Complaint (Doc. 9; the "Motion") filed by Defendants, Business Law Group, P.A. ("BLG") and LM Funding, LLC ("LMF") as follows.

**INTRODUCTION**

This proposed class action case arises out of Defendants' conduct of sending foreclosure purchasers of properties within community associations estoppel certificates demanding payment for the entire amount of the previous owners' liability despite clear statutory prohibition against such conduct.

On February 25, 2016, Plaintiff filed the Class Action Complaint and Demand for Jury Trial (Doc. 2; the "Complaint") asserting the following claims: (I) Violation of Florida's Consumer Collection Practices Act ("FCCPA") - Injunctive Relief; (II) Violation of FCCPA – Damages; (III) Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") –

Injunctive Relief; (IV) Violation of FDUTPA – Damages; (V) Unjust Enrichment; (VI) Civil Conspiracy; and (VII) Restitution.

Plaintiff alleges that LMF enters into contracts with community associations ("Associations") under which LMF buys or otherwise assumes the right to collect the Associations' delinquent accounts.  Complaint, ¶¶ 6, 29, Exhibit B.  Then, LMF uses its related law firm entity, BLG, to collect the delinquent accounts.  *Id.* at ¶¶ 39, 40, 41, 44.

Plaintiff alleges he purchased a unit in the Seagrove condominium community, an Association that was under contract with LMF, at a foreclosure sale.  *Id.* at ¶ 57.  Three weeks later, BLG began its efforts to collect from Plaintiff the total amount owed to the Association by the previous owner.  BLG's collection efforts, aimed at benefitting LMF, included demanding payment for the previous owner's interest and late charges, applying Plaintiff's assessment payments to the previous owner's interest and late charges, and filing a Claim of Lien against Plaintiff's unit.  *Id.* at ¶¶ 59-78.

Pursuant to sections 718.116(1)(a), Florida Statutes (the "Condo Statute"), a unit or parcel owner is "jointly and severally liable with the previous owner for all unpaid assessments that came due up to the time of transfer of title."  Fla. Stat. §§ 718.116(1)(a).[1]  Despite the limitation of liability provided by the Condo Statute, BLG, in accordance with LMF's business model, sent Plaintiff and other similarly-situated new owners estoppel certificates demanding amounts in excess of the "unpaid assessments" to which LMF Association clients were entitled. Complaint, ¶ 48.

---

[1] The Homeowners' Association statute is materially the same.  *See* Fla. Stat. § 720.3085(2)(b) (the "HOA Statute").  The Class Definition in the Complaint includes new owners in both condominium and homeowners' associations.  Because Plaintiff purchased a condominium, and Defendants only discuss the Condo Statute in the Motion, this Response will only discuss the Condo Statute.

In the Motion, Defendants argue the Complaint fails to state any claim because (a) a new owner's liability is coextensive with the previous owner's liability; and (b) a new owner takes title subject to an Association's lien rights. With respect to Plaintiff's specific claims, Defendants argue that the Complaint fails to state a claim for violation of FCCPA because (a) Plaintiff does not sufficiently allege the basis of BLG's knowledge that it asserted a legal right that did not exist; and (b) there are no factual allegations directed to LMF. Defendants argue that the Complaint fails to state a claim for violation of FDUTPA because Plaintiff does not allege the unlawful demands were made in the conduct of trade or commerce. Defendants argue that the Complaint fails to state a claim for unjust enrichment or restitution because (a) Plaintiff's allegations are conclusory; and (b) the claims are barred by the voluntary payment doctrine. Finally, Defendants argue that the Complaint fails to state a claim for conspiracy because their conduct was proper as a matter of law and Plaintiff does not adequately describe the conspiracy.

Aside from attacking the merits of Plaintiff's claims, which is improper on a motion to dismiss, Defendants' preferred statutory interpretation is legally deficient. As described below, Defendants' other arguments also lack merit, and the Motion should be denied.

## STANDARD OF REVIEW

A complaint must simply contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). All that is required is "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). To avoid dismissal for failure to state a claim, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Factual allegations must be accepted as true and construed in a light most favorable to the plaintiff. *Id.; Belanger v. Salvation Army,* 556 F. 3d 1153, 1155 (11th Cir. 2009).

Notice pleading does not require "that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim…" *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir.2001) (quoting *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir.1981)). Rather, a complaint should include *either* direct *or* inferential allegations of the material elements necessary to state a claim. *Id.*

## ARGUMENT

Plaintiff's claims are supported by the plain language of the Condo Statute. Further, Plaintiff states claims for violations of FCCPA, violations of FDUTPA, unjust enrichment, restitution, and civil conspiracy.

**I.    The Complaint States Claims Based on the Plain Language of the Condo Statute.**

Defendants argue that their interpretation of the Condo Statute renders Plaintiff's claims insufficient as a matter of law. According to Defendants, (1) a current unit owner is liable for assessments that come due while he or she owns the unit; (2) that unit owner incurs interest, late charges, and fees on unpaid assessments; (3) a new unit owner is jointly and severally liable with the previous owner; (4) therefore, a new unit is liable for the previous owner's interest, late charges, and fees. Defendants also claim a new owner takes title "subject to Associations' lien rights." For the reasons discussed below, the Court should reject Defendants' interpretation of the Condo Statute.

**A.    A New Owner's Liability is Not Coextensive with the Previous Owner's.**

Courts should "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Haskins v. City of Ft. Lauderdale,* 898 So.2d 1120, 1123 (Fla. 4th DCA 2005) (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992)). "Furthermore, where possible, a court must give full effect to all statutory provisions, so that no part is inoperative, insignificant or superfluous, and construe related statutory provisions in harmony with one another." *Gonzalez v. McNary,* 980 F.2d 1418, 1420 (11th Cir. 1993). A basic principle of statutory construction is *expression unius est exclusion alterius* – the mention of one thing implies the exclusion of another. *Moonlit Water Apartments, Inc. v. Cauley,* 666 So. 2d 898, 900 (Fla. 1996).

The Condo Statute undoubtedly declares a unit owner liable for all assessments which come due while he or she owns the unit. Fla. Stat. § 718.116(1)(a). Further, assessments which are not paid **when due** bear interest at the rate provided in the declaration. Fla. Stat. § 718.116(3). An Association may recover from the unit owner its fees and costs incurred in collection, and, if authorized by the declaration, administrative late fees. *Id.* Accordingly, a unit owner is liable for assessments and the related charges incurred as a direct result of his or her failure to timely pay an assessment.

However, a new unit owner is only jointly and severally liable with the previous owner **for all <u>unpaid assessments</u>**. Fla. Stat. § 718.116(1)(a) ("Additionally, a unit owner is jointly and severally liable with the previous owner for all **<u>unpaid assessments</u>** that came due up to the time of transfer of title.") (emphasis supplied). Section 718.103 defines "Assessment" as "a share of the funds which are required for the payment of common expenses, which from time to time is assessed against the unit owner."

Late fees, interest, collection costs, and attorney's fees are not "assessments." They are individualized charges that cannot be construed as being "a share of the funds which are required for the payment of common expenses." *See United States v. Forest Hill Gardens E. Condo. Ass'n,* 990 F. Supp. 2d 1344, 1347-48 (S.D. Fla. 2014).

The Condo Statute regularly distinguishes "unpaid assessments" from late fees, interest, and collection costs:

- "An association…is not liable for any unpaid assessments, late fees, interest, or reasonable attorney's fees and costs that came due before the association's acquisition of title…" Fla. Stat. § 718.116(1)(b)(2).

- "Assessments and installments on assessments which are not paid when due bear interest…" Fla. Stat. § 718.116(3).

- "Any payment received by an association must be applied first to any interest accrued by the association, then to any administrative late fee, then to any costs and reasonable attorney fees incurred in collection, and then to the delinquent assessment." Fla. Stat. § 718.116(3).

- "The claim of lien secures all unpaid assessments that are due and that may accrue after the claim of lien is recorded and through the entry of a final judgment, as well as interest, administrative late fees, and all reasonable costs and attorney fees incurred by the association incident to the collection process." Fla. Stat. § 718.116(5)(b).[2]

If late fees, interest, and other charges were subsumed within the definition of "unpaid assessments," then much of the language of section 718.116 would be superfluous and, consequently, have no meaning. Basic principles of statutory construction prohibit statutes from being interpreted to have no meaning. *See United States v. Brame*, 997 F.2d 1426, 1428 (11th Cir. 1993) ("This court must interpret a statute so as to give effect to each of its provisions; any interpretation which renders parts or words in a statute inoperative or superfluous is to be avoided.").

---

[2] The HOA Statue include numerous similar references to late fees, interest, and collection costs being distinct from unpaid assessments.

Recently, Florida's Third District Court of Appeal applied these statutory construction canons to the HOA Statute in finding that a first mortgagee is not liable for the previous parcel owner's interest, attorneys' fees, costs, or other charges. *Catalina West Homeowners Ass'n, Inc. v. Federal Nat. Mortg. Ass'n,* No. 3D15-271 at *3, 2016 WL 1235728 (Fla. 3d DCA Mar. 30, 2016). The court concluded that "if the Legislature intended to include attorney's fees, costs, interest, or other charges as part of the first mortgagee's liability, it would have included any one or more of those items in the safe harbor provision." *Id.*

Similar to the HOA statute's safe harbor provision discussed in *Catalina,* the Condo Statute's description of a new owner's liability only includes joint and several liability for "unpaid assessments." If the Legislature intended to make a new owner jointly and severally liable for all of the previous owner's other debts to an Association, such as interest, late fees, and attorneys' fees, it would have included any one or more of those items in the description.

Even though the Condo Statute's description of a new owner's liability does not include anything other than unpaid assessments, Defendants argue that the statute's use of the term "jointly and severally" means that a new owner's liability must be "coextensive with the previous owner's liability for unpaid assessments, including for interest, fees, costs, and other charges incurred while the predecessor was in title." Motion, p. 5. However, the Condo Statute does not state that a new owner is jointly and severally liable for the **total amount owed** by the previous owner to the Association. Instead, the Condo Statute plainly provides that a new owner is "jointly and severally liable with the previous owner for **all unpaid assessments that came due up to the time of transfer of title."** Fla. Stat. § 718.116(1)(a) (emphasis added). The entire sentence must be given effect, which leads to the conclusion that a new owner is not jointly and

severally liable for anything other than the previous owner's unpaid assessments, and not for all of the previous owner's debts as Defendants would have the Court believe.

### B.  The Complaint's Defined Class Does Not Take Title Subject to an Association's Lien Rights.

The Complaint limits the proposed class to persons, other than first mortgagees, who purchased a property at a foreclosure sale.  Complaint, ¶ 84.  A judgment of foreclosure extinguishes all junior liens on the property, including Association liens. *See Stonebridge Gardens Section Two v. Campbell,* No. 13–61280–CIV, 2014 WL 229191 at *2 (S.D. Fla. Jan. 21, 2014) (citing *Holly Lake Ass'n v. Fed. Nat'l Mortg. Ass'n*, 660 So. 2d 266, 268 (Fla. 1995)).  As such, when Plaintiff obtained his certificate of title, the Seagrove Association did not have a lien on his property.  Rather, an unsecured **personal liability** remained with respect to the former owner, of which Plaintiff became jointly and severally liable for the **unpaid assessments**.  *See* Fla. Stat. §§ 718.116(1)(a) and (b)(1).

Defendants do not argue that the Seagrove Association had a lien on Plaintiff's property for the full amount of the previous owner's liability. *See* Motion, p. 9-10.  Instead, Defendants vaguely assert an Association's right to enforce a lien against a foreclosure purchaser like Plaintiff. *Id.* at p. 10.

Pursuant to section 718.116(1)(c), a new owner has 30 days to pay the amount he or she owes to the Association.  Failure to pay the full amount when due shall entitle the Association to record a claim of lien against the parcel.  Fla. Stat. § 718.116(1)(c).  Here, Plaintiff alleges he attempted to pay the amount he owed to the Seagrove Association.  Complaint, ¶ 66.  Plaintiff further alleges that BLG filed a Claim of Lien in the amount of the unpaid assessments. *Id.* at ¶ 74, Exhibit H.  Accordingly, contrary to its current argument, BLG asserted lien rights against Plaintiff's unit only after he refused to pay the previous owner's debts and only in an amount

equal to the unit's unpaid assessments. BLG intentionally did not include the previous owner's late fees, interest, or other charges, even though it had been applying Plaintiff's assessment payments to those charges.

Because a new unit owner is only liable for the previous owner's unpaid assessments, and because a new owner does not take title subject to an existing lien, Plaintiff properly states claims for relief based on Defendants' conduct in violation of the Condo Statute.

## II.    The Complaint States Claims for Violations of FCCPA.

Plaintiff generally alleges that Defendants have an illegal practice of sending estoppel letters to new owners demanding more than permitted by the relevant provisions of Chapters 718 and 720 of the Florida Statutes. Complaint, ¶¶ 48-55. BLG asserts that it will apply payments for unpaid assessments to the previous owner's interest and late fees and threatens to place a lien on the new owner's property to coerce payments to which LMF is not entitled. *Id.* In Counts I and II, Plaintiff alleges Defendants' conduct with respect to Plaintiff violated the FCCPA because BLG attempted to enforce a debt when BLG knew the debt was not legitimate and asserted the existence of a legal right, namely the right to file a lien against Plaintiff's unit for the previous owner's late fees and interest, when BLG knew that such legal right did not exist. *Id.* at ¶¶ 98, 99.

Defendants argue that Plaintiff's allegations fail to explain the basis of their actual knowledge that the legal rights they sought to enforce did not exist, "other than to assert that it is inconsistent with the statutory interpretation urged by Plaintiff." Motion, pp. 11-12. In other words, Defendants do not believe that the plain language of the Condo Statute is sufficient to serve as a basis for Defendants' actual knowledge. Plaintiff contends that an allegation that Defendants are acting in direct contravention to a statute is sufficient to state a claim for

violation of FCCPA. However, even absent that source of knowledge, Plaintiff makes other allegations that tend to show BLG knew it could not legally enforce the rights asserted in its demands to Plaintiff. For example, BLG filed a Claim of Lien against Plaintiff's property in the amount of unpaid assessments only, not including a claim to amounts for late fees, interest, and other charges. Complaint, ¶ 74, Exhibit H. The Court may infer that BLG consciously ignored amounts over-and-above the unpaid assessments when filing its Claim of Lien because BLG knew it did not have a right to collect those amounts from Plaintiff and perhaps was concerned about slandering Plaintiff's title.

Importantly, in *Catalina*, the court determined that "[t]he priority of payment schedule established by section 720.3085(3)(b) cannot create entitlement to any payments other than those expressly established by section 720.3085(2)(c)." In his Complaint, Plaintiff alleges that Defendants are attempting to do just that – create entitlement to payments to which they are not entitled by applying payments to those amounts instead of to unpaid assessments. *See* Complaint, ¶¶ 49, 51, 52.

Plaintiff's pleading of Defendants' actual knowledge, especially in light of reasonable inferences, satisfies the liberal pleading standard and sufficiently states a claim for violation of FCCPA. *See Ashcroft*, 556 U.S. at 678 (factual allegations must be accepted as true and construed in a light most favorable to the plaintiff).

**III.   The Complaint States Claims for Violations of FDUTPA.**

Defendants contend that their practice of sending estoppel certificates in an effort to collect debt does not fit within FDUTPA's definition of "trade or commerce." As a result, Defendants argue, they cannot be liable for FDUTPA violations.

FDUTPA protects consumers from those "who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). A violation may be based on "unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c).

FDUTPA defines "trade or commerce" as:

[T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

Fla. Stat. § 501.203(8).

Defendants argue that FDUTPA violations cannot be based on conduct undertaken to preserve and pursue legal remedies, specifically letters demanding payment of assessments, because such activity is not undertaken in "trade or commerce," *citing Acosta v. Gustino,* 2012 U.S. Dist. LEXIS 130656 (M.D. Fla. 2012). *See* Motion at pp. 14-15.

However, a debt collector's conduct in attempting to collect a debt may fall within FDUTPA's broad definition of "trade or commerce." *See Williams,* 408 F. Supp. 2d at 1274-75 (denying motion to dismiss FDUTPA claim based on scheme to collect unearned attorneys' fees in connection with collection of assessments); *Schauer v. General Motors Acceptance Corp.,* 819 So. 2d 809, 812 (Fla. 4th DCA 2002) (reversing dismissal of complaint).

In the Motion, Defendants acknowledge *Williams* and *Schauer* and attempt to distinguish those cases from the present matter. Defendants also attempt to distinguish *Alhassid v. Bank of America,* 60 F. Supp. 3d 1302, 1323-24 (S.D. Fla. 2014) (denying motion to dismiss FDUTPA claim based on loan servicer's attempts to collect unearned fees) and *Martorella v. Deutsche Bank Nat. Trust Co.,* 931 F. Supp. 2d 1218, 1224 (S.D. Fla. 2013) (denying motion to dismiss

FDUTPA claim based on loan servicer purchasing force-placed insurance and accepting kickbacks). However, Defendants miss the point with their attempts to distinguish these cases. First, whether or not the cases discussed the "trade or commerce" element, the courts let FDUPTPA claims stand based on similar conduct to Defendants'. Moreover, Plaintiff alleges that BLG and LMF use the improper estoppel certificates to advance their own financial interests as part of their business model. *See* Complaint at ¶¶ 42, 43, and 48. Because LMF has purchased the rights to the proceeds from the delinquent accounts, BLG's efforts are anything but standard collection attempts on behalf of an Association client. Rather, Plaintiff alleges that LMF has an interest in the proceeds of BLG's efforts and, as such, influences BLG's representation of BLG's and LMF's joint Association clients. *See id.* at ¶¶ 42, 46, and 47. Accordingly, the FDUTPA claim is based on Defendants' conduct in "trade or commerce."

Finally, Plaintiff properly alleges the elements of a FDUTPA claim, including claims for injunctive relief and damages. To state a claim for injunctive relief under FDUTPA, a plaintiff must allege that (1) the defendant engaged in a deceptive act or practice in trade or commerce, and (2) the plaintiff was aggrieved by the deceptive act or practice. *Klinger v. Weekly World News, Inc.*, 747 F.Supp. 1477, 1480 (S.D. Fla. 1990). Plaintiff alleges that he has been aggrieved by Defendants' unfair and deceptive practices by receiving improper estoppel certificates and debt validation letters from BLG and being forced to pay more than he owed to stop the continuing accrual of interest and late fees. *See* Complaint at ¶¶ 59, 64, 69, and 79.

With respect to damages, section 501.211(2) provides that a person who has suffered a loss as a result of a violation may recover actual damages. A claim for damages under FDUTPA requires "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *North American Clearing, Inc. v. Brokerage Computer Systems, Inc.*, 666 F. Supp. 2d 1299, 1310

(M.D. Fla. 2009) (internal citations and quotations omitted). Plaintiff alleges he incurred actual damages as a result of the Defendants' unfair and deceptive conduct, which violates FDUTPA and injures and is otherwise a detriment to consumers. *See id*. at ¶ 79. These allegations are sufficient to state a claim for damages. Accordingly, Count III and Count IV each state a claim for violation of FDTUPA.

## IV. The Complaint States Claims for Unjust Enrichment and Restitution.

Plaintiff alleges the close relationship between Defendants and that BLG collects amounts to be turned over to LMF, rather than Associations. *See id*. at ¶¶ 33-42, 46, and 47. Accordingly, because Plaintiff has alleged that his overpayments directly benefitted Defendants, Count V states a claim for unjust enrichment, and Count VII states a claim for restitution.

Further, the unjust enrichment and restitution claims are not barred by the voluntary payment doctrine. The voluntary payment doctrine is an affirmative defense that is more appropriately addressed on summary judgment. *See Ruiz v. Brink's Home Sec., Inc.,* 777 So. 2d 1062, 1064 (Fla. 2d DCA 2001) (reversing dismissal based on voluntary payment doctrine). The doctrine provides generally that "where one makes a payment of any sum under a claim of right with knowledge of the facts, such a payment is voluntary and cannot be recovered." *Id.* at 1064.

In an analogous case, the District Court for the Southern District of Florida denied an Association's motion to dismiss a mortgagee's claims to recover condominium association fees paid after it acquired a unit at a foreclosure sale. *U.S. v. Cayman Village Condo. Ass'n, Inc.,* Case No. 12-61797-Civ, at *1, 2013 WL 1665846 (S.D. Fla. Apr. 17, 2013). The court held that the voluntary payment doctrine involves a "fact-based inquiry and is not suited for resolution at the dismissal stage." *Id.* Specifically, the court could not decide the question of whether the plaintiff in fact made its payment voluntarily, rather than under protest. *Id.*

Here, Plaintiff specifically alleges that he attempted to pay the proper amount due, but that those payments were applied to amounts that Plaintiff did not owe. Complaint, ¶¶ 66, 72. Moreover, Plaintiff alleges that he paid the amounts demanded by BLG "in order to stop the continuing accrual of interest and late fees." *Id*. at ¶ 79.

In addition, Plaintiff has defenses to the voluntary payment doctrine. For example, when a payment is made pursuant to a contract and by the terms of the contract there was no enforceable obligation to make the payment, the defense of voluntary payment is not available. Fla. Stat. § 725.04. As the owner of a unit in the Seagrove condominiums when he received and eventually paid BLG's illegal demand, Plaintiff was a party the Seagrove Condominium Declaration. The Declaration provides that a new owner is only liable for the previous owner's unpaid assessments, meaning Plaintiff had no enforceable obligation to make the payment, and defeating the voluntary payment defense.

## V. The Complaint States a Claim for Civil Conspiracy.

A civil conspiracy requires "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Charles v. Fla. Foreclosure Placement Ctr., LLC,* 998 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008).

Defendants argue that Plaintiff fails to identify an underlying tort to support a civil conspiracy. Yet, the Complaint includes multiple allegations that Defendants engaged in unlawful practices by sending estoppel certificates demanding amounts in excess of that allowable by law and using those certificates as leverage to extort payments to which Defendants

were not entitled. *See* Complaint ¶¶ 32, 43, 47, 48, 49, 51, 52, 53, and 55. Accepting these allegations as true, Plaintiff identifies an underlying unlawful act.

Defendants next argue that Plaintiff only offers a conclusory statement that the Defendants agreed to send estoppel certificates to Plaintiff rather than fully describing the scope of the conspiracy. However, the Complaint describes in great detail the arrangement between LMF and BLG, and their agreement to send estoppel certificates seeking amounts in excess of that allowable by statute. *See id*. As such, Count VI states a claim for civil conspiracy.

**VI.  Plaintiff Should Be Granted an Opportunity to Amend its Complaint if the Court Grants the Motion to Dismiss.**

Without conceding any of Defendants' arguments, but to the extent the Court is persuaded by any of them, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, Plaintiff requests an opportunity to amend the Complaint to the extent necessary. *See Thomas v. Town of Davie*, 847 F. 2d 771, 773 (11th Cir. 1988) (court should permit amendment unless there is a substantial reason to deny leave to amend).

## CONCLUSION

For all of the above reasons, the Motion to Dismiss should be denied.

**[Attorney's signature appears on the following page.]**

                                    */s/ Brad F. Barrios*
Kenneth G. Turkel, Esq.
Florida Bar No. 867233
Email: kturkel@bajocuva.com
Brad F. Barrios, Esq.
Florida Bar No. 35293
Email: bbarrios@bajocuva.com
**BAJO | CUVA | COHEN | TURKEL**
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)

J. Daniel Clark, Esq.
Florida Bar No. 0106471
Email: dclark@clarkmartino.com
Matthew A. Crist, Esq.
Florida Bar No.
Email: mcrist@clarkmartino.com
**CLARK & MARTINO, P.A.**
3407 W. Kennedy Boulevard
Tampa, FL 33609
(813) 879-0700 (telephone)
(813) 879-5498 (facsimile)
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on April 18, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

                                    */s/ Brad F. Barrios*
Attorney